COUSINEAU *v.* MUSKEGON TRACTION & LIGHTING CO.

1. CARRIERS—INJURIES TO PASSENGERS—CROWDING AT STATION — NEGLIGENCE OF CARRIERS.

Where a street-railway company maintaining an amusement park has reason to expect a very large crowd upon a certain day, it may be guilty of negligence in failing to maintain a sufficient force or guard to prevent injury to passengers by rushes and crowds at its station platform irrespective of whether it was its duty to provide railings or a fence about the platform to hold back the crowd.

2. SAME — NEGLIGENCE OF PASSENGER — TAKING POSITION OFF PLATFORM.

Where an intending street-car passenger had reason to expect that the car would stop with a portion of it opposite the position she took off the station platform, thereby affording her an opportunity to get aboard, she could not be charged with negligence, as a matter of law, in taking that position.

3. SAME—ATTEMPT TO BOARD MOVING CAR—EVIDENCE.

Evidence that plaintiff attempted to grab hold of the rear handle of the motor car before being thrown under the trailer is not inconsistent with her claim that she was pushed by the crowd under the trailer, since she may have been pushed into a position where an effort to save herself by reaching out would have been an act of prudence rather than an act of negligence.

Error to Ottawa; Padgham, J. Submitted January 24, 1908. (Docket No. 35.) Decided March 31, 1908.

Case by Netiva Cousineau, by next friend, against the Muskegon Traction & Lighting Company for personal injuries. There was judgment for plaintiff, and defendant brings error. Affirmed.

*Nims, Hoyt, Erwin & Vanderwerp,* for appellant.

*James E. Sullivan* (*W. J. Turner,* of counsel), for appellee.

MONTGOMERY, J. This case has been once considered by the court. The opinion is reported in 145 Mich., at page 314. On a third trial of the case, the plaintiff recovered, and the defendant brings error. Three grounds of error are urged in the brief of counsel for the defendant: *First*, that the plaintiff failed to show negligence on the part of the company; *second*, that the plaintiff, in leaving the platform when there was room for her to stand there and going into the sand, was guilty of contributory negligence, as a matter of law; and *third*, that the verdict was against the weight of evidence for the reason that the evidence clearly showed that the plaintiff was attempting to board a moving car, and that this was, to her knowledge, a negligent act.

The facts are fully stated in our former opinion, but may briefly be recapitulated as follows: The defendant is the owner of a street railway and also of an amusement park upon the shores of Lake Michigan. It runs its cars into this park and around a loop. At one side of the loop is a platform 50 feet by 30 feet. The planking of the platform at the side farthest from the track lies directly upon the sand, and the surface is gradually raised until it is about even with the running board of the cars at the track. There was no barrier along the track or around this platform, but it could be reached from all sides. As a rule the cars stop opposite the platform, and the passengers step from the platform into the cars. Sometimes the cars coming from the city stop before reaching it.

It is the contention of the defendant in this case that this only occurs when there is another train of cars at the platform, but the plaintiff's testimony on this point tends to show that the cars stop there at other times. She testified as follows:

"*Q.* I say, have you ever been out there, have you at any time seen cars come around that curve and not stop right there by that platform when there was room enough for them to stop there?

"*A.* I have seen them stop sometimes beyond the platform when there was room at the platform.

"Q. Did you ever see a car stop west of that platform when there was room for it to stop there at the platform?

"A. Well, sometimes, when the trailer was not just at the platform.

"Q. Do you mean to say that you have ever seen a trailer that was over the other side of the platform to the west?

"A. Yes, sir.

"Q. When?

"A. A good many times, I couldn't just tell you when it was that I have seen them.

"Q. And isn't it true that the only times that cars ever did stop west of that platform was when the rails would be filled up with cars there along by the platform, waiting for the crowd that would come out from the theater so as to take all the people down town?

"A. Sometimes the trailer would stop before they got at the platform.

"Q. What do you mean by the trailer stopping before it got to the platform?

"A. That is, the trailer was not—all the trailer was not at the platform.

"Q. You mean there would be some part of the trailer that would be west of the platform?

"A. Yes, sir.

"Q. That is, back on the part where the sand was?

"A. Yes, sir.

"Q. How much of the trailer did you ever see west of that platform?

"A. Sometimes two or three seats; that is, the length of two or three seats.

"Q. And you say that has occurred when there has been no cars there by the platform ahead of the trailers?

"A. Yes, sir."

The testimony tended to show that on the day in question, the 4th of July, there was a large crowd at the park; that shortly after 10 o'clock, after the theater was over, the plaintiff and a girl companion went to this platform to take a car and found a large crowd there; that after standing on the platform for a short time, they stepped off the platform into the sand with the purpose of taking the car. The testimony also shows that in this they were not

acting differently to many others, as there was a large crowd in the sand to the west of the platform in the region where they stood. The plaintiff stood about three feet west of the platform, and her friend was near her.

The testimony on the part of the plaintiff tends to show that there was present to her knowledge but one policeman or employé of the defendant whose duty it was to keep the crowd back, while the testimony of the defendant shows that there were four. The car came up, and before it reached the platform, a rush appears to have been made, and the plaintiff's testimony tends to show that she and her companion were pushed forward, plaintiff was pushed under the car by the crowd, and received the injuries for which this action was brought.

The defendant attempts to point out certain differences between the testimony given on the former trial and that given on the present trial. It is claimed that the plaintiff and her companion voluntarily left the platform and went into the sand. The inference is that this was the course taken by the plaintiff. But if she had reason to expect that the car would stop with a trailer or a portion of it opposite the point in the sand where she took her position, we are not able to say that she was acting imprudently in taking that position. A great many other people on the same occasion did the same thing.

Taking up specifically the question of whether the defendant was guilty of negligence, we think the defendant's contention in this respect is fully answered by the plaintiff and the quotations of authorities contained in our former opinion. There can be no doubt that the defendant had reason to expect a very large crowd on this occasion. Whether it was essential that the company should have railings or a fence to hold back the crowd it is not important to determine, as it was open to the jury to find that there was negligence in failing to maintain a sufficient force or guard to prevent just such a catastrophe as occurred in this case, as the cases cited in our former opinion sufficiently show.

Nor was the plaintiff guilty of contributory negligence, as a matter of law, in taking her place on the sand: In determining this question, the circumstances must be judged as they appeared to the plaintiff at the time. By her testimony, it was not unusual for the train to stop with the rear of the car opposite the position which she actually took. It would be immaterial as affecting the question of her negligence as to what the occasion of the car making such a stop was. If she had reason to believe that the car would make a stop at that point, where she would have an opportunity to get aboard, she ought not to be charged with negligence for taking such a position.

Upon the question of whether the plaintiff was attempting to board this car at the time she received the injury, the evidence is directly conflicting. The plaintiff and her companion both testified that they were not making any attempt to board this car, and did not attempt to until it came to a stop, but that they were pushed forward and the plaintiff thrown under the car. There is testimony that she attempted to grab hold of the rear handle of the motor car, but this is not wholly inconsistent with her claim. She might have attempted to do so because she was pushed into a position where an effort to save herself by reaching out would have been an act of prudence rather than an act of negligence. There was ample testimony in the case to support the verdict of the jury, and it is not open to us, nor was it to the circuit judge, to say that the evidence was so clearly against the weight of testimony as to justify a vacation of the verdict.

The judgment is affirmed.

GRANT, C. J., and OSTRANDER, HOOKER, and CARPENTER, JJ., concurred.